IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| TERRANCE BULLARD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-CV-4550 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| CHICAGO POLICE OFFICERS | ) | |
| MATTHEW PARISI (Star #9649) and | ) | |
| FRANK HODGEMAN (Star #4829), | ) | |
| | ) | |
| Defendants. | ) | |

## CIVIL RIGHTS COMPLAINT

NOW COMES Plaintiff, TERRANCE BULLARD ("Plaintiff" or "Bullard"), by and through his attorneys, Barney & Hourihane, LLP and the Law Office of Timothy J. Fiscella, and complaining of Defendants, CITY OF CHICAGO ("City"), CHICAGO POLICE OFFICER MATTHEW PARISI (Star #9649), and CHICAGO POLICE OFFICER FRANK HODGEMAN (Star #4829) (Referred to herein collectively as "Defendant Officers") states as follows:

## INTRODUCTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331

1

and 1343(a), the Constitution of the United States, and this Court's supplemental jurisdiction powers.

3.      Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## PARTIES

4.      Plaintiff, Terrance Bullard, is a resident of City of Chicago, Illinois, within the Northern District of Illinois, Eastern Division. He is an employee of the United States Postal Service ("USPS").

5.      On information and belief, Defendant Officers were at the time of the events complained of herein employed by the City of Chicago as police officers.

6.      The City of Chicago is a duly incorporated municipal corporation within the Northern District of Illinois and is the employer and principal of the Defendant Officers.

7.      At all times material to this Complaint, the Defendant Officers were acting within the scope of their employment and under color of state law, ordinance, and/or regulation, statutes, custom, and usage of the City of Chicago.

## BACKGROUND

8.      Plaintiff resides with his son in a multi-unit building owned by Plaintiff and located on the 12100 block of South Michigan Avenue in Chicago, Illinois.

9.      On or about March 25, 2016, approximately one month before the

events complained of herein, Plaintiff was arrested by officers of the Chicago Police Department after a check of Plaintiff's name during a traffic stop showed that there was an arrest warrant issued out of Marion County, Indiana that purportedly listed Plaintiff's name.

10.     Though such a warrant did exist, the warrant was actually for another individual who had stolen Plaintiff's identity and thereafter committed crimes in Marion County, Indiana.

11.     On, March 26, 2016, the day after his arrest, Plaintiff was brought before a judge in Cook County, Illinois to appear in court for his arrest based on the fugitive warrant issued out of Marion County.

12.     After looking into the matter, the judge determined that Plaintiff was not the individual sought by the warrant, ordered Plaintiff's immediate release, and issued a written order that stated the following:

> "It is hereby ordered that the above named individual [referencing Terrence Bullard] with IR#1388987, DOB 3-27-1986 is not the individual of the same name sought by Marion County, Indiana under warrant/leads no. W155439344 and FBI no. 300343FC8."

13.     The judge advised Plaintiff to keep a copy of the order in case law enforcement attempted to arrest him again on the same warrant.

14.     In April or May of 2016, Plaintiff was again arrested by Chicago Police Officers on the same arrest warrant.

15.     During the arrest, Plaintiff explained to the arresting officers that he was not the person wanted on the warrant and showed the officers a copy of the

judge's order, which Plaintiff had on his person.

16. The arresting officers transported Plaintiff to the police station, believed to be the 11th District, and investigated the matter.

17. The officers ultimately determined that Plaintiff was not the person sought on the warrant and immediately released Plaintiff from custody directly from the police station.

18. On information and belief, no police reports were generated with respect to this arrest of Plaintiff.

19. On June 20, 2016, at approximately 3:45 a.m., Plaintiff was inside of his residence when Defendant Officers and other Chicago Police Officers arrived at or near the front of his residence.

20. Defendant Officer Parisi and Defendant Officer Hodgeman were two of the officers who were in front of Plaintiff's residence.

21. Noticing the arrival of the police, Plaintiff went outside to see what was going on.

22. Upon seeing Plaintiff, Defendant Parisi demanded that Plaintiff speak with him.

23. Defendant Parisi then began to question Plaintiff regarding whether he had witnessed a shooting that had taken place on the block about 20 minutes prior.

24. Plaintiff explained to Defendant Parisi that he did not witness anything and was inside when the shots were fired.

25.     Defendant Parisi continued to question Plaintiff and eventually asked to search Plaintiff's residence.

26.     Plaintiff refused and when he did so Defendant Parisi became upset and demanded Plaintiff's identification.

27.     Plaintiff provided Defendant Parisi with his driver's license.

28.     Plaintiff advised Defendant Parisi that if Defendant Parisi ran his name through Chicago's law enforcement database, an arrest warrant from Indiana would likely come up under his name, but that this warrant was not in fact for him.

29.     Defendant Parisi then ran Plaintiff's name through a law enforcement database and reported to Plaintiff that there was a warrant out for his arrest.

30.     Defendant Parisi then detained Plaintiff.

31.     Plaintiff explained to Defendant Parisi that his identification had been stolen and that the person whom the warrant was actually issued for had unlawfully used Plaintiff's identification.

32.     Plaintiff also explained that he was previously arrested by the Chicago Police Department on the same warrant less than two months prior, and that a Cook County judge issued an order acknowledging that Plaintiff was not the subject wanted on the warrant.

33.     Plaintiff told Defendant Parisi that the judge's order would clear up any confusion regarding whether he was the subject wanted on the warrant.

34.     Plaintiff also told Defendant Parisi that Plaintiff had a copy of the judge's order inside of his home, just steps away, and that Plaintiff could obtain it if

allowed him to go inside his home to retrieve it.

35.    Defendant Parisi refused to allow Plaintiff to leave.

36.    Plaintiff then told Defendant Parisi that Plaintiff's mother was also in possession of a copy of the judge's order, and that Plaintiff or Defendant Parisi could call his mother, who lived less than two blocks away, and have her bring a copy of the order to Defendant Parisi or to the police station.

37.    Defendant Parisi refused to give Plaintiff permission to contact his mother and did not contact Plaintiff's mother himself.

38.    During Plaintiff's conversation with Defendant Parisi, a female Hispanic police officer, believed to be a tactical officer, arrived on scene.

39.    This female officer informed Defendant Parisi that she was aware of situations similar to the one described by Plaintiff and that she had actually dealt with such a situation in the recent past.

40.    The female officer then stated to Defendant Parisi that she actually recognized Plaintiff and asked Plaintiff, "Are you the postman?" referring to Plaintiff's employment with the United States Postal Service.

41.    Plaintiff responded, "Yes."

42.    The female officer then explained to Defendant Parisi that she had participated in a recent arrest of Plaintiff on the same warrant - referencing the March 25 arrest of Plaintiff described above - and that Plaintiff was released from the police station after that arrest because it was determined that he was not the person actually sought by the warrant.

6

43.     The female officer described the warrant to Defendant Parisi as a "bogus warrant" and explained to Defendant Parisi that Plaintiff was in possession of a judge's order stating that Plaintiff was not the subject wanted on the warrant.

44.     Defendant Parisi replied, "Fuck that, he's going to jail."

45.     Plaintiff was then arrested and placed inside of Defendant Parisi's police vehicle.

46.     Thereafter, Defendant Officers and other Chicago Police Officers entered into Plaintiff's home and searched it.

47.     The search of Plaintiff's home, which produced no illegal contraband of any kind, was conducted without a warrant, probable cause, consent or any other legal justification.

48.     Plaintiff was eventually transported to the 11th District police station, where he continued to explain to Defendant Officers and other unknown Chicago police officers that he was not the person sought by the warrant and that he had a court order stating so.

49.     Plaintiff also continued to tell Defendant Officers that if they would allow him to use the phone he could have his mother bring a copy of the court order to the police station, but Defendant Officers ignored Plaintiff's repeated requests.

50.     Plaintiff also requested that Defendant Officers call police officials from Marion County, Indiana, the jurisdiction in which the warrant was issued, to confirm that Plaintiff was not the wanted person.

51.     Later in the morning, as he was awaiting transfer to Cook County jail,

Plaintiff explained the situation to an officer wearing a Chicago Police Department uniform with a white shirt, believed to be a supervisor, and asked the supervising officer to make a phone call to the jurisdiction from where the warrant was issued so that the situation could be cleared up.

52. In response, the supervising officer told Plaintiff that law enforcement officials from Monroe County, Indiana had already contacted the Chicago Police Department regarding Plaintiff's arrest and were asking questions pertaining to Plaintiff and Plaintiff's identity.

53. This supervising officer reported to Plaintiff that he did not know the answer to the questions he was asked by the Marion County official, so "the courts" would have to sort it out.

54. When Plaintiff asked the supervising officer what he meant, the officer did not respond and walked away.

55. Shortly after the brief conversation with the supervising officer, Plaintiff was transported to Cook County jail where he remained in custody for at least 5 nights.

56. Plaintiff was released from custody after Plaintiff's mother faxed a copy of the court order referred to herein to an individual at the Cook County Sheriff's Office.

57. This unknown individual at the Cook County Sheriff's Office acknowledged to Plaintiff's mother that Plaintiff was not the person named in the warrant and Plaintiff was subsequently released directly from Cook County jail.

8

58. Significantly, the individual who is actually the subject of the warrant discussed herein has a large neck tattoo, which is recorded and noted in this individual's booking photograph and arrest records.

59. Plaintiff has no tattoos on his neck.

60. The individual also has a different "FBI number" than Plaintiff, and, on information and belief, this number is attached and/or associated with the warrant in the law enforcement database accessed and used by the Chicago Police Department.

61. In addition, the warrant and associated information referenced herein lists the offenses for which the individual is wanted as "Fraud Offenses."

## Count I
## 42 U.S.C. § 1983: Unlawful Entry and Unreasonable Search

62. Plaintiff re-alleges each of the preceding paragraphs as if fully stated herein.

63. As described in the preceding paragraphs, Defendant Officers unlawfully entered Plaintiff's residence and searched it without a warrant, consent, probable cause, or any other legal justification, in violation of the Fourth and Fourteenth Amendment to the United States Constitution, and hence 42 U.S.C. § 1983.

64. The actions of the Defendant Officers were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

65. As a result of the wrongful infringement of Plaintiff's rights,

undertaken pursuant to the City of Chicago's policy and practice as described more fully above, Plaintiff has, as a direct and proximate cause, suffered injury, including emotional distress.

## Count II
## 42 U.S.C. § 1983: Failure to Intervene

66.     Plaintiff re-alleges each of the preceding paragraphs as if fully stated herein.

67.     As described more fully above and below, one or more of the Defendant Officers had a reasonable opportunity to prevent the violations of Plaintiff's constitutional rights as set forth above.

68.     Specifically, Defendant Officers had the opportunity to stop Plaintiff's illegal detention and arrest, as well as the unlawful search of Plaintiff's home, but deliberately failed to do so.

69.     The Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

70.     As a result of the Defendant Officers' failure to intervene, Plaintiff suffered damages, as well as emotional distress.

## Count III
## 42 U.S.C. §§ 1983 & 1985: Conspiracy to Commit Constitutional Violations

71.     Plaintiff re-alleges each of the preceding paragraphs as if fully stated herein.

72.     As discussed in greater detail above, some or all of the Defendant Officers conspired with each other and/or with other members of their department

to cause damage to the Plaintiff in the following manner:

  i. Agreeing not to generate reports documenting their conduct in order to cover-up their own and each other's misconduct; and

  ii. Agreeing to generate reports and other documents which omitted material facts relating to the arrest and detention of Plaintiff;

  iii. Purposefully omitting from reports any description of or explanation for the illegal and unlawful search conducted of Plaintiff's home;

  iv. Continuing to unlawfully detain Plaintiff knowing there was not probable cause or any other legal justification to do so; and/or

  v. Failing to report or inform supervisors of the Plaintiff's illegal detention and arrest.

73. The Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

74. Defendant Officers' actions, and the conspiracy described above, violated Plaintiff's rights under the Fourth and Fourteenth Amendment to the United States Constitution, and hence 42 U.S.C. §§ 1983 and 1985.

75. The aforementioned actions of the Defendant Officers were the direct and proximate cause of the violations of the United States Constitution discussed above, and the injury and emotional distress resulting therefrom.

## Count IV
### 42 U.S.C. § 1983: Unlawful Arrest and Detention

76.     Plaintiff re-alleges each of the preceding paragraphs as if fully stated herein.

77.     As described in the preceding paragraphs, the Defendant Officers unlawfully detained Plaintiff in violation of the Fourth Amendment and Fourteenth Amendments to the United States Constitution without reasonable suspicion, probable cause, or any other legal justification.

78.     Defendants arrested Plaintiff without probable cause and knowing that the Plaintiff was not truly the subject of any arrest or search warrant.

79.     Defendant Officers arrested Plaintiff despite that Defendant Officers did not reasonably believe that Plaintiff was the person who was sought by the warrant for which Plaintiff was arrested.

80.     Plaintiff's continued detention after his arrest was based upon Defendant Officers' false, incomplete, and erroneous police reports, which intentionally hid the fact that Plaintiff was not the person sought by the warrant for which he was arrested.

81.     In fact, Defendant Parisi was informed by another police officer that Plaintiff was not the subject of the search warrant and continued his unlawful detention and arrest anyway.

82.     Once transporting Plaintiff to the police station, Defendants again had an opportunity to stop Plaintiff's unlawful seizure and arrest. Instead they engaged

in one or more of the following unreasonable acts designed to further Plaintiff's illegal detention:

    i.    Knowingly disregarding identifying information provided by authorities in Marion County, Indiana with regard to the wanted person's physical description and identifying characteristics, such as the neck tattoo described above;

    ii.    Failing to compare Plaintiff's fingerprints, photo, description, FBI number, or other identifying information to the individual sought;

    iii.    Comparing Plaintiff's fingerprints, FBI number, or other identifying information to the wanted individual, discovering they were not a match, and continuing to detain him anyway;

    iv.    Failing to examine information provided by the warrant and accompanying law enforcement bulletin; and/or

    v.    Ignoring the information provided by the Hispanic female officer as to how she determined Plaintiff was not the subject of the warrant; and

    vi.    Refusing to allow Plaintiff to present a court order showing that he was not the person wanted by the warrant and otherwise failing to take any reasonable investigative steps to verify the claims made by Plaintiff and supported by the Hispanic female officer discussed herein.

83. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

84. The unlawful arrest and subsequent detention of Plaintiff by Defendant Officers, as described above, was done without reasonable suspicion, probable cause, or any other legal justification, in violation of the Fourth and Fourteenth Amendment to the United States Constitution, and hence 42 U.S.C. § 1983.

85. As a result of the unjustified violation of Plaintiff's rights by the Defendant Officers, Plaintiff has suffered injury, including emotional distress.

## Count V
## State Law Claim: False Imprisonment

86. Plaintiff re-alleges each of the preceding paragraphs as if fully stated herein.

87. Plaintiff was imprisoned by one or more Defendant Officers, and thereby had his liberty to move about unlawfully restrained, despite the Defendant Officers' knowledge that there was no probable cause or other legal justification for doing so.

88. The actions of the Defendant Officers were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

89. As a result of the wrongful infringement of Plaintiff's rights, undertaken pursuant to the City of Chicago's policy and practice as described more fully above, Plaintiffs have, as a direct and proximate cause, suffered injury,

including emotional distress.

90.    As described above, the Defendant Officers conduct was undertaken within the scope of their employment such that their employer, City of Chicago, is liable for their actions.

**Count VI**
**State Law Claim: *Respondeat Superior***

91.    Plaintiff re-alleges each of the preceding paragraphs as if fully stated herein.

92.    In committing the acts alleged in the preceding paragraphs, the Defendant Officers were members and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

93.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

**Count VII**
**State Law Claim:  Indemnification**

94.    Plaintiff re-alleges each of the preceding paragraphs as if fully stated herein.

95.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

96.    The Defendant Officers are employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

**WHEREFORE**, Plaintiff, TERRANCE BULLARD, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, DEFENDANT OFFICER MATTHEW PARISI, and DEFENDANT OFFICER FRANK HODGEMAN, awarding compensatory damages and attorneys' fees, along with punitive damages against the DEFENDANT OFFICERS in their individual capacity, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


Respectfully submitted,


/s/ *Ian Barney*
One of Plaintiff's Attorneys

IAN M. BARNEY
Barney Hourihane, LLP
874 Green Bay Road, Suit 320
Winnetka, Illinois 60093
Tel: (312) 854-0906


/s/ *Timothy J. Fiscella*
One of Plaintiff's Attorneys

TIMOTHY J. FISCELLA
Law Office of Timothy J. Fiscella
201 East Ogden Suite 215
Hinsdale, Illinois 60521
Tel: (630) 708-6690

16